UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SCBA LIQUIDATION, INC.,
f/k/a SECOND CHANCE BODY ARMOR, INC.,

Case No: GT 04-12515
Chapter 7

Debtor.

_____/

## OPINION REGARDING MOTION TO RECONSIDER ORDER GRANTING TRUSTEE'S OBJECTION TO THE STATE OF CALIFORNIA'S CLAIM

Appearances:

Daniel K. Reising, Esq., Portland, Oregon, attorney for the German Free State of Bavaria and the German State of North Rhine-Westphalia.

Bernard A. Eskandari, Esq., Los Angeles, California, attorney for Kamala D. Harris, Attorney General of the State of California.

Geoffrey Silverman, Esq., and Karin F. Avery, Esq., West Bloomfield, Michigan, attorneys for Steven W. Lemmings, et al.

Cody H. Knight, Esq., Kalamazoo, Michigan, attorney for James W. Boyd, Chapter 7 Trustee.


On July 27, 2012, this court entered an order disallowing the claim filed by the State of California against the bankruptcy estate of SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc. (the "Debtor"), but permitting the claim to be included and paid as part of a class proof of claim in the Debtor's bankruptcy case. The German Free State of Bavaria and the German State of North Rhine-Westphalia (collectively, the "German States") filed a motion requesting that the court clarify and/or reconsider its prior order. For the reasons that follow, the German States' motion is denied.

## I.  PROCEDURAL BACKGROUND.

Prior to its bankruptcy filing, Second Chance Body Armor, Inc. ("Second Chance") was a leading producer of bullet-resistant products, including concealable body armor. Second Chance sold these vests to various individuals and entities, including many law-enforcement officers and agencies.  After concerns arose about the performance of its bullet-resistant vests, Second Chance filed a voluntary chapter 11 petition on October 17, 2004.  The case was converted to chapter 7 on November 22, 2005, and James W. Boyd was appointed as the Chapter 7 Trustee ("Trustee").

On April 14, 2005, the California Attorney General filed proof of claim number 304 on behalf of the People of the State of California ("California").  The claim asserted damages for all vests purchased in California, either by law-enforcement agencies directly or by wholesalers and distributors in California who sold vests to California law-enforcement agencies (the "Damage Portion").  The claim also asserted damages for various civil penalties and costs (the "Penalty Portion"). Similar claims were filed by approximately twenty other states (collectively, the "State Claims").

On October 6, 2005, this court entered an Order Granting Motion for Class Certification.  (Dkt. No. 625.)  The order established a class of "[a]ll persons and entities in the United States and its territories, who have purchased or used a bulletproof vest manufactured by Second Chance Body Armor, Inc., which contains Zylon® . . . ."[1] with

---

[1] "Zylon®" and bullet-resistant vests are described in greater detail in this court's prior opinion granting the Trustee's motion to approve settlement of an adversary proceeding brought by the Trustee against the manufacturer of the Zylon fiber, Toyobo Co., Ltd., its American subsidiary, and several individual defendants.   In re SCBA Liquidation, Inc., 451 B.R. 747 (Bankr. W.D. Mich. 2011).

various exclusions (the "Class Claimants"). (Id. at ¶A.) Among the exclusions were "any claims of state attorneys general exercising their police powers." (Id.) The order also limited the class to breach of warranty claims and expressly excluded "any and all claims for violation of statute and/or punititive or exemplary damages, including . . . any and all claims for penalties or civil penalties brought by any State Attorney General on behalf of consumers." (Id.)

The Class Claimants filed proof of claim number 666, in the amount of $181,134,000.00, on December 21, 2005 (the "Class Claim"). The amount of the Class Claim has subsequently been amended and reduced. The Trustee has objected to the Class Claim,[2] as have the German States.[3] The court has entered an order implementing procedures to identify class members and prevent duplication of claims.[4] Several status conferences have been held to address the Class Claim and the objections thereto.

---

[2] See Trustee's Objection to Claim No. 666 Filed by Class Claimants. (Dkt. No. 3097.)

[3] The German States have actually filed two sets of objections to the Class Claim. The German States' first objection was filed on September 30, 2011, and raised issues regarding the lack of specificity as to the amount of the claim and the number of claimants, the calculation and valuation of the claim, and the potential for duplication of recoveries by class members. (Dkt. No. 3108.) The German States also filed an Objection to Claims of All Members of the Class that Filed Proof of Claim No. 666 on September 30, 2011. (Dkt. No. 3109.)
Then, on August 9, 2012, the German States filed an Objection to the Inclusion of State Statutory and Police Power Claims in the Class Proof of Claim No. 666 (the "Second Objection"). (Dkt. No. 3579.) An evidentiary hearing regarding the timeliness of the German States' Second Objection and their standing to raise such an objection will be held before this court on November 16, 2012.

[4] See Order on Motion for Approval of Class Notice Program, Authorization to Engage Notice Consultants and Support Vendor, Approval of Claim Form, Approval of Adjustment of Individual Class Member Claims, and Approval of Notice Procedures regarding Class Claim Administration. (Dkt. No. 3395.)

3

On September 13, 2011, the Trustee filed an objection to California's claim. (Dkt. No. 3074.) Among other things, the Trustee's objection asserted that the Damage Portion of California's claim was duplicative of individual claims and the Class Claim and that the Penalty Portion of the claim should be subordinated under § 726(a)(4) of the Bankruptcy Code.[5] The Trustee also objected to the other State Claims on these same grounds.

Several states filed responses to the Trustee's objection. Others, like California, did not.[6] Regardless of whether the individual state had filed a response, the court scheduled status conferences on the all of the Trustee's objections to the State Claims in early 2012. Many of the states appeared telephonically at the status conferences, through representatives of their Attorney General's offices. Again, other states did not appear or appeared only at the continued status conferences. From the beginning, the court, the Trustee and the participating states agreed that all of the state claims should be treated similarly. For example, at the status conferences held on February 27, 2012, the court explained that, even if "there is an objection pending and the state is not participating, the procedure will be that *all states will be treated alike*." (Tr. 2/27/2012 at 17) (emphasis added.) The court noted that this is "what we've done in the past . . . and I think this is the trustee's intention." (Id.) Accordingly, although California was among the states that did not appear at the status conferences, it was not defaulted and the Trustee's objection to

---

[5] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 – 1532 inclusive. The specific provisions of the Bankruptcy Code are referred to herein as "§ ___."

[6] The State of California explained, in its Opposition to German States' Motion to Reconsider Order Granting Trustee's Objection to Claim No. 304, that "the appropriate personnel within the office did not receive notices" of the these proceedings "[d]ue to staffing changes and administrative errors within the California Attorney General's Office." (Dkt. No. 3605.)

California's claim remained pending.

In total, the court held four days of status conferences on the State Claims. Attorney Daniel K. Reising, counsel for the German States, was present, either personally or by telephone, at all of these status conferences. Although the court's intention to treat all of the State Claims equally was referenced repeatedly at the status conferences, Attorney Reising did not raise any objection to the State Claims or the court's procedures.

On May 16, 2012, the court held final status conferences on the Trustee's objections to the State Claims. By this time, the Trustee had entered into stipulated settlements with all of the states, except California. Pursuant to the stipulations, the Damage Portion of each state's claim was re-calculated and allowed as a general unsecured claim. However, "[f]or administrative purposes," the Damage Portion of the claims was to be "satisfied pursuant to the payment process established for the Class Claim in the Bankruptcy Case." (See, e.g., Order Approving Stipulation Resolving Claim No. 473 and Claim No. 934 filed by the State of Texas, Dkt. No. 3464.) Under the stipulations, the Penalty Portions of the state claims were also amended, allowed, and subordinated for distribution pursuant to § 726(a)(4).

Because California was the only state that did not respond to the Trustee's objection, and again citing the parties' and the court's desire that "the claims of all states should receive a similar treatment," the court issued a scheduling order on May 24, 2012. (Order Scheduling Evidentiary Hearing on the Trustee's Objection to Claim No. 304 of the State of California, Dkt. No. 3497.) The scheduling order required California to file a written response by a date certain and to personally appear, through counsel, at an evidentiary hearing. The order further provided that if no response was timely filed, a default hearing

would be held.  At the conclusion of the default hearing, the order explicitly stated that the court might "order that California's claim be treated in the same manner as similar claims filed by other states" or that the court would "determine what other relief was appropriate . . . ." (Id.)

California did not file a written response and a default hearing was held before this court on July 25, 2012.  At the hearing, counsel for the Trustee noted California's lack of responses to the Trustee's objection.  Regardless, the Trustee's attorney requested that the court treat California "the same as the other state claimants," that is, by "allow[ing] their claim and allow[ing] that claim to be paid through the Class." (Tr. 7/25/2012 at 12-13.) The court granted the Trustee's request, stating as follows:

> I will comment from the Court's standpoint that, throughout this process, there have been a number of states and commonwealths involved through their various attorney generals.  And I've consistently stated that I believe that all of the governmental state entities – for that matter, any local entities – should be treated alike.  And this order will accomplish it, because California has filed a claim.  California has not taken any action.  California . . . has been advised of numerous – or should I say multiple – hearings about its claim, and California has not appeared.  And I stated this at the last hearing that I do not know exactly why, but I suspect it may have to do something with the State of California's budget, but that's speculation on my part.
>
> Whatever reason may exist, because of nonprosecution and because of treating California the same as the other states, the claim is disallowed against the estate – the bankruptcy estate – in its entirety. . . .

(Tr. 7/25/2012 at 13-14.)  The court then inquired as to whether the order should provide that California "may" request payment through the Class or whether the order should state that California "shall" receive such treatment.  After the Trustee's attorney expressed a preference for the more definitive "shall" language, the court concluded, "So the order will say that *the State of California's claim shall be included in the Class claim and treated*

6

*consistently with the other states.*" (Tr. 7/25/2012 at 14-15 (emphasis added).)

In accordance with this oral ruling, the court entered an Order Granting Objection to Claim No. 304 filed by the People of the State of California (the "California Order") on July 27, 2012. (Dkt. No. 3567.) The order provided that "Claim No. 304 of the State of California is disallowed as a claim against the bankruptcy estate" but that "the State of California shall have a claim within the Class in the amount of $6,354,166.81, and shall be treated according to the procedures, restrictions and terms approved as to the Class, and receive distribution thereon through the Class, but shall not be deemed to be a Class Member." (Id.) *Although the language of this order differed* from the stipulated orders entered with regard to the other State Claims – California's claims was disallowed against the bankruptcy estate, while the other State Claims were allowed – *the end result was the same. Each State Claim, including California's claim, is to be paid through the Class.*

On August 9, 2012, the German States filed a Motion for Clarification and/or Reconsideration of the Court's Order Granting Objection to Claim No. 304 filed by the People of the State of California (the "Motion to Reconsider"). (Dkt. No. 3580.) In the Motion to Reconsider, the German States request that the court clarify whether the California Order affirmatively determined that California holds a valid claim to be paid through the Class or whether the order "merely recharacterizes" the claim "from one against the bankruptcy estate to one that seeks recovery through the Class." (Id.) If the California Order is a definitive determination that California holds a claim which may be paid through the Class, the German States ask the court to reconsider that holding and either disallow the claim in its entirety or recharacterize the claim as one that seeks recovery as part of the Class Claim. (Id.)

Although these distinctions seem insignificant in isolation, their import becomes clear when placed in context of the German States' Second Objection to the Class Claim, which was filed concurrently with the Motion to Reconsider on August 9, 2012. (Dkt. No. 3579.) In their Second Objection, the German States explain that they recently became aware that six states[7] have filed class proof of claim forms, seeking payment on behalf of consumers in their respective states through the class, even though they do not hold allowed claims against the Debtor's bankruptcy estate. The German States objected to the Class Claim to the extent it includes the claims submitted by these six states.[8] If, as the German States assert, the effect of the California Order was to disallow California's claim and "recharacterize" it as a claim that might be paid as part of the Class Claim, California's claim would be in the same category as the claims of the other six states and would also be subject to the German States' Second Objection.

On August 29, 2012, the court entered a scheduling order requiring the Trustee to file a response to the Motion to Reconsider. (Dkt. No. 3582.) The Trustee filed a timely response on September 13, 2012. (Dkt. No. 3601.) California also filed an opposition to the Motion to Reconsider on September 17, 2012. (Dkt. No. 3605.)

## II. ISSUE.

The sole issue presented is whether the court should clarify and/or reconsider its prior order disallowing California's claim against the bankruptcy estate but ruling that California shall have a claim that is allowed and paid through the Class.

---

[7] The six states are Alabama, Florida, Georgia, Mississippi, Ohio and Tennessee.

[8] The Second Objection is not currently before the court, see supra note 2, and is discussed herein only for context.

8

### III.  JURISDICTION.

The court has subject matter jurisdiction over this bankruptcy case and this contested matter.  28 U.S.C. § 1334.  The case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.).  The Motion to Reconsider is a core proceeding because it involves the "allowance or disallowance of claims against the estate."  28 U.S.C. § 157(b)(2)(B).  This opinion constitutes the court's findings of fact and conclusions of law.  FED. R. BANKR. P. 7052.

### IV.  DISCUSSION.

In their Motion to Reconsider, the German States first request that the court clarify whether the California Order represents an affirmative determination that California holds a valid claim which will be paid through the class.  Given the plain language of the California Order, no such clarification is required.  The California Order provides that California "*shall* have a claim within the Class in the amount of $6,354,166.81, and *shall* be treated according to the procedures, restrictions and terms approved as to the Class, and *receive distribution thereon through the Class*."  (California Order, Dkt. No. 3567 (emphasis added).)  This language effectuates the intention of the court, as requested by the Trustee, that has been repeatedly and unequivocally expressed from the earliest status conferences on the State Claims to the later, final hearing on California's claim: that is, that all states asserting damage claims on behalf of vest purchasers within their jurisdictions be treated consistently and that such claims be paid through the Class.  The fact that California's claim was disallowed against the bankruptcy estate, while the other State Claims were allowed against the estate pursuant to the stipulated orders, is merely a

9

matter of semantics that does nothing to alter the language and intent of the California Order. Like all other states that filed claims against the Debtor's bankruptcy estate, California's damage claim shall be paid through the Class Claim.

Recognizing that use of the word "shall" in the California Order "could be construed to be an affirmative determination of the claim," the German States next ask the court to reconsider this aspect of the order. (Motion to Reconsider, Dkt. No. 3580 at 4.) To the extent the German States seek reconsideration of the California Order, their motion is brought pursuant to § 502(j) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3008. Rule 3008 states that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate" and that "[t]he court after a hearing on notice shall enter an appropriate order." Section 502(j) provides that a "claim that has been allowed or disallowed may be reconsidered for cause" and that the "reconsidered claim may be allowed or disallowed according to the equities of the case."

The Bankruptcy Code does not define what constitutes "cause" for reconsideration and bankruptcy courts have broad discretion to determine whether reconsideration of the allowance or disallowance of a claim is appropriate. See Colley v. Nat'l Bank of Texas (In re Colley), 814 F.2d 1008, 1010 (5th Cir. 1987) ("the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary"); FED. R. BANKR. P. 3008 Advisory Committee's Note (1983) ("Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."). In exercising this discretion, bankruptcy courts often consider the length of time between entry of the order and the motion to reconsider, and find "cause" for reconsideration of a claim only if circumstances exist that would justify alteration or amendment of the judgment under

10

Federal Rule of Civil Procedure 59(e) or relief from the judgment under Federal Rule of Civil Procedure 60(b).[9] See In re Aguilar, 861 F.2d 873, 874 (5th Cir. 1988) ("[A] Rule 3008 motion filed within the [fourteen] day period is in fact analogous to a [Bankruptcy] Rule 9023, or Fed. R. Civ. P. 59 motion."); In re Enron Corp., 352 B.R. 363, 366-68 (Bankr. S.D.N.Y. 2006) (the "evident trend in the case law" is to analyze motions for reconsideration of claims as if they were motions under Rule 59 or 60; the standard that applies is "distinguished by the length of time that elapsed between entry of the order and the filing of the motion"); In re Leroux, 216 B.R. 459, 463 (Bankr. D. Mass. 1997) ("Many courts have held that although there is no deadline for filing a motion for reconsideration under § 502, if the motion is filed within [fourteen] days of the order, it should be decided pursuant to the standards under Fed. R. Bankr. P. 9023."). Because the German States filed their Motion to Reconsider within fourteen days after entry of the California Order, the court will consider the standard applied to motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e).[10]

---

[9] Federal Rules of Civil Procedure 59 and 60 are made applicable to bankruptcy cases by Bankruptcy Rules 9023 and 9024, respectively.

[10] There is some disagreement regarding the proper standard to be applied to motions to reconsider under § 502(j) and Rule 3008. See In re Rayborn, 307 B.R. 710, 721 (Bankr. S.D. Ala. 2002) (noting that "there is considerable variation in the cases concerning the test or standard which should be used"). Although most courts utilize the bifurcated approach described above, some courts apply Rule 60(b) to all motions to reconsider claims regardless of timing, while others consider the "totality of circumstances" and use Rules 59 and 60 only for "guidance." See, e.g., In re Willoughby, 324 B.R. 66 (Bankr. S.D. Ind. 2005) (the standards under Rules 59 and 60 should not "apply mechanically to motions to reconsider claims;" instead, the court should consider "any relevant factors to determine whether equity warrants reconsideration of the claim"); In re Excello Press, Inc., 83 B.R. 539, 541 (Bankr. N.D. Ill. 1988) ("Fed. R. Civ. P. 59 does not apply to reconsideration of allowance of claims."). This court has considered whether the German States have established cause for reconsideration under Rule 60(b) or any other relevant circumstance, and holds that they have not.

Under Rule 59(e), alteration or amendment of a judgment is only justified where there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.  See GenCorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).  Motions for reconsideration are "not an opportunity to re-argue a case" and should not be used by the parties to "raise arguments which could, and should, have been made before judgment issued." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998); FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992).

The German States have not asserted any grounds that would justify reconsideration of the California Order.  They do not assert that the California Order contains clear legal errors or that the controlling law has changed since entry of the order. The German States do not cite any "newly discovered evidence" in support of their motion. The only supposed new fact referenced in the motion is the German States' acknowledgment that six states other than California, which do not hold allowed claims against the bankruptcy estate, have sought payment through the Class Claim.  The actions of these other states and their treatment under the Class is not a newly discovered fact with regard to California's claim.  As the German States recognize in their motion, California is "distinguishable from [the six other states] in that it did file a timely claim" against the bankruptcy estate.  (Motion to Reconsider, Dkt. No. 3580 at 5.)  In addition, the court, as requested by the Trustee and all of the other states, has consistently expressed its intention to treat California's claim the same as other State Claims, and pay the Damage Portion of the claim through the Class, at numerous status conferences and hearings, on the record in open court.  Counsel for the German States was present at

12

those hearings and never voiced an objection to the intended treatment of California's claim. The California Order can hardly be considered a new development.

Although the term "manifest injustice" is not used, the German States' Motion to Reconsider suggests that unfairness will result if the California Order is construed as written. Specifically, the German States assert that to the extent the California Order disallowed the claim against the bankruptcy estate, but provides for payment of the claim through the Class, the order places California in a better position than the other six states which are also seeking payment of their claims through the Class.

The arguments asserted by the German States do not prevent manifest injustice but, to the contrary, create it. Again, the court has consistently and repeatedly stated that all State Claims would be treated equally. By providing that California's damage claim shall be paid through the Class, the California Order accurately reflects this intention. Reconsideration of the California Order might advance the German States' perceived procedural agenda, but it would undercut or defeat a just result with regard to the treatment of California's claim (and perhaps the other states' claims as well).

In its review of the German States' Motion to Reconsider, the court has considered many factors and procedural alternatives. The court notes, as one example, that it could grant the Motion to Reconsider and schedule a new hearing on the Trustee's objection to California's claim. See, e.g., In re Rayborn, 307 B.R. 710, 720 (Bankr. S.D. Ala. 2002) (explaining that reconsideration of claims "is a two-step process;" first the court determines whether there is "cause" for reconsideration, then the court "decides whether the 'equities of the case' dictate allowance or disallowance of the claim"); FED. R. BANKR. P. 3008 Advisory Committee's Note (1983) ("If a motion to reconsider is granted, notice and hearing

13

must be afforded to parties in interest before the previous action . . . taken in respect to the claim may be vacated or modified."). If this occurs, California has indicated that it will seek to enter into a stipulation with the Trustee that is substantially similar to the agreements with other states. Given all the other prior status conferences and hearings, the Trustee would enter into such a stipulation. Under such a stipulation, California's damage claim will likely be allowed and paid through the Class. Requiring these additional procedural steps would run afoul of Bankruptcy Rule 1001, which states that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." This bankruptcy case, which has been pending for eight years, is almost ready to be closed. Distributions on allowed claims, including the Class Claim and the German States' claims, are imminent. There is no reason to cause further expense and delay by imposing additional and unnecessary procedural requirements that will achieve the same economic result currently mandated by the California Order.

## V. CONCLUSION.

For the foregoing reasons, the German States' Motion to Reconsider is DENIED. The court's prior order regarding California's claim remains binding. A separate order shall be entered accordingly.

Dated this 22nd day of October, 2012
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

14