UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

SCBA LIQUIDATION, INC.,                                     Case No. 04-12515
f/k/a SECOND CHANCE BODY ARMOR, INC.,                       Chapter 7

        Debtor.
_____/

## MEMORANDUM OPINION GRANTING
## CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES
## AND REIMBURSEMENT OF COSTS

Appearances:

Geoffrey L. Silverman, Esq., and Karin F. Avery, Esq., Farmington Hills, Michigan, attorneys for the Class and Class Claimants.

Ronald A. Schuknecht, Esq., Traverse City, Michigan, attorney for James W. Boyd, Chapter 7 Trustee.

## I. INTRODUCTION.

In October 2005, this court certified a class through which of purchasers and users of Second Chance Body Armor's Zylon-containing bulletproof vests could assert breach of warranty claims (the "Class"). (Dkt. No. 625.) This court's Order Granting Motion for Class Certification appointed Kanner & Whiteley, LLC and Silverman & Morris, PLLC (collectively, "Class Counsel") as attorneys for the Class. (Dkt. No. 625.) Class Counsel has now filed a Motion for Award of Attorneys' Fees and Reimbursement of Costs (the "Motion"). (Dkt. No. 3680.) The Motion requests attorneys' fees and expenses in the aggregate amount of at least 33% of the portion of the Class Claim Fund (i.e., the distribution to be made from the bankruptcy estate on account of the

Class Claim), after the fees and costs of Rust Consulting, Inc., and Kinsella Media, LLC, are paid.

A hearing on the requested attorneys' fees and expenses was held before this court on August 15, 2013. At the hearing, Class Counsel made argument in support of their Motion. James W. Boyd, the Chapter 7 Trustee (the "Trustee"), also made representations on the record regarding the value of Class Counsel's work and substantial and unique contributions in this bankruptcy case. After the hearing, the Trustee filed a written statement supplementing his oral comments. (Dkt. No. 3722.) The following constitutes the court's findings of fact and conclusions of law regarding Class Counsel's requested attorneys' fees and expenses. Fed. R. Bankr. P. 7052.

## II. JURISDICTION.

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.). This matter is a core proceeding because it concerns the administration of the debtor's estate, 28 U.S.C. § 157(b)(2)(A), allowance of claims against the estate, 28 U.S.C. § 157(b)(2)(B), and affects adjustment of the debtor-creditor relationship, 28 U.S.C. § 157(b)(2)(O).

## III. FINDINGS OF FACT.

A.   *The Attorneys' Fees and Expenses Sought by Class Counsel.*

At the hearing on the Motion, Class Counsel provided the following estimates regarding the proposed distribution on the Class Claim. The Class Claim has been allowed in the amount of $39,388,323.21. According to the Trustee's current estimates,

2

the distribution to be made on account of the Class Claim is approximately $4,561,561.02. After deducting an estimated $393,529.20 for the fees and expenses of Rust Consulting, Inc., and Kinsella Media, LLC, the Net Class Claim Fund will be approximately $4,168,031.82.

Class Counsel has requested minimum attorney's fees and expenses of 33% of the Net Class Claim Fund, or approximately $1,375,450.50. Class Counsel, given the overall circumstances of this case, has also requested more than this minimal amount.

B.    *The Services Rendered by Class Counsel.*

In support of their requested fees, Class Counsel states that they have spent many hours in connection with this case. Kanner & Whiteley worked 1,409.60 billable hours on this case from August 1, 2005 to present. If the lodestar method were applied to calculate their fees, the total award would be $395,725.00. Silverman & Morris worked 1,669.05 billable hours on this case from August 19, 2005 to present. The total lodestar amount of the Silverman Morris attorney's fees would be $467,517.75.

Class Counsel's Motion also requests reimbursement for expenses incurred. As of the filing of the Motion, Kanner & Whiteley's reimbursable expenses totaled $17,502.98. The expenses incurred by Silverman & Morris totaled $9,733.53.

After their appointment in 2005, the diligent efforts of Class Counsel have, without any doubt by the court, positively affected this bankruptcy case, assisted the Trustee, and benefited the estate in several ways. The key contributions of the Class and Class Counsel include:

1.    *Objecting to the KERP.*

It is estimated that the original Key Employee Retention Program (the "KERP") motion would have cost the bankruptcy estate over $2 million. After objection by the Class, the KERP fees were capped at just over $500,000. This resulted in a potential savings to the estate of approximately $1.5 million. (See Dkt. Nos. 394 (KERP Motion), 413 (Class Objection), & 478 (Stipulated KERP Order)).

2.    *Filing Motion for Conversion to Chapter 7.*

In August 2005, the Class filed a motion to convert this case from chapter 11 to chapter 7. (Dkt. No. 500.) For cause, the motion was granted on November 22, 2005. (Dkt. No. 671.) Conversion was a benchmark in this case for several reasons. It allowed for subordination of penalties and interest asserted by various state Attorneys General and resulted in appointment of a nationally recognized and highly qualified Trustee. Furthermore, absent conversion, § 547 preference claims may not have been pursued and recovered. The Trustee represents that, at the time of conversion, the chapter 11 professionals advised him that there were no preference claims to be recovered. The Trustee pursued these causes of action and eventually recovered $1,977,013 in preference claims to benefit creditors. (See Trustee's Supplemental Statement, Dkt. No. 3722.)

3.    *Facilitating Communication During Chapter 7 Case.*

Immediately after conversion, Class Counsel arranged a meeting with the Trustee and representatives from approximately twenty-five state Attorney General's offices. This initiated valuable communication with these governmental entities. Throughout the case, Class Counsel was instrumental in communicating the bankruptcy

estate's positions on important issues – including the Department of Justice ("DOJ") settlement, the Bulletproof Vest Partnership Act ("BVPA") issues, and the settlement of major, contested litigation against Toyobo – to the members of the Class.

4.  *Assisting with Toyobo Litigation.*

Class Counsel met with the Trustee's litigation counsel in the Toyobo adversary proceeding, and were particularly helpful as the estate estimated its damages in that litigation.

5.  *Providing Representation for Individual Vest Purchasers–the "Little Guys."*

In the court's view, protecting the "little guys" was one of the most important contributions of Class Counsel.  Only approximately 300 individual law enforcement officers, departments, and states filed their own vest claims with the bankruptcy estate. The Class consisted of approximately 30,000 individual and non-State vest claims.  The State Claims encompassed another 57,000 vests.

As the numbers show, most of these individual vest purchasers lacked the financial ability and legal sophistication to file and pursue their own claims against the bankruptcy estate.  But for the Class and the efforts of Class Counsel, the interests of many of these individual vest purchasers would not have been adequately represented in this bankruptcy case and these individuals would not have received any compensation for their valid vest claims.

6.  *Negotiating Amount of Class Claim:  Valuation of Vest Claims, Avoiding Duplication, Etc.*

With regard to vest claims, Class Counsel was instrumental in negotiating with the States, the Trustee, and other creditors to arrive at a $750 per vest value for purposes of calculating the Class Claim.  The Trustee explained that this settlement

5

was the result of a "long, tortuous process" and that the resolution would not have been possible without the efforts of Class Counsel. The court finds that, absent the $750 per vest stipulation, a lengthy fight over vest valuation would have been a legal "free-for-all," which would have resulted in significant, and otherwise perhaps unnecessary, administrative expenses.

Class Counsel also analyzed the vest claims for duplication and prior recoveries (i.e., the BVPA and payments received through the Oklahoma class distributions), and played a particularly important role in negotiating a settlement with the DOJ regarding the overlap between the BVPA and the Class Claim. Without Class Counsel, these tasks would have fallen to the Trustee and his general or claims counsel and would have resulted in greater administrative expense to the estate.

6.     *Providing a Mechanism for Distribution to Class Members and States.*

The Class Claim provided an efficient mechanism through which vest claims will be paid to individual purchasers. Equally and perhaps more importantly, the Class Claim provided a means to distribute reimbursements to individual purchasers whose claims were included as part of the allowed State Claims. The Class estimates, and the court believes, that it will be making distributions to approximately 6,900 persons who are included in the State Claims. By this process, the Class is saving many States from engaging in time-consuming and complicated logistical processes to make those distributions. This is a significant benefit to the States and Commonwealths, many of which are currently under their own severe budgetary constraints.

6

## IV. DISCUSSION.

The Class was certified under Fed. R. Bankr. P. 7023, which incorporates Fed. R. Civ. P. 23 by reference. Fed. R. Civ. P. 23(h) provides that the court "may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties" in a class action. The request for attorneys' fees must be made by motion, and notice of the request must be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Class members should also have the opportunity to object to the motion for fees. Fed. R. Civ. P. 23(h)(2). Here, notice was appropriate and no Class member or other party-in-interest has objected to the requested attorneys' fees. Notwithstanding lack of objection, the court determined to hold a formal hearing.

There are two main methods used by courts in considering and awarding attorney's fees in common fund cases: (1) the lodestar method and (2) the percentage of the fund method. "It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." Bowling v. Pfizer, 102 F.3d 777, 779 (6th Cir. 1996) (quoting Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993)); see also Bessey v. Packerland Plainwell, Inc., 2007 WL 3173972, *4 (W.D. Mich. Oct. 26, 2007) (unpublished opinion) (Miles, Senior J.) ("Sixth Circuit authority expresses no particular preference for application of either the lodestar method or the percentage of the fund method...."). These authorities are also applicable to awards of class counsel's attorneys' fees in bankruptcy cases.

7

The trial court's award of fees must be "reasonable under the circumstances." Bowling, 102 F.3d at 779 (quoting Rawlings, 9 F.3d at 516 ("When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."). In this case, the court determines that it is appropriate to utilize the percentage of the fund method to calculate Class Counsel's attorney's fees. Bessey, 2007 WL 3173972, *4 (the "fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible").

The court further decides, given the extraordinary beneficial results, that Class Counsel should be awarded 36% of the Net Class Claim Fund amount. Bessey, 2007 WL 3173972 at *4 ("Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (quoting Shaw v. Toshiba America Information Systems, Inc., 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)).

There are six factors that the court has considered in evaluating the reasonableness of the attorney's fee percentage. Bowling, 102 F.3d at 780. These factors support the court's conclusion that 36% of the Net Class Claim Fund is the appropriate amount to be awarded to Class Counsel. The court determines that an increased percentage over the otherwise customary 33% amount is entirely appropriate in this case.

A.    *The value of the benefit rendered to the Class.*

As recognized above, Class Counsel has greatly contributed to this case in a number of significant ways.   These efforts all conferred benefit on the Class and its members.   Many Class members would likely not have filed claims, or would not be receiving as much for their claims, without the efforts of Class Counsel.   The vest claims included in the Class are valued at $750 per vest (less other amounts received from the Oklahoma settlement or the BVPA).   As a result, it is estimated that vest purchasers will receive an 11% distribution on their claims, which will be reduced to approximately 7% after subtracting the applicable fees.

B.    *The value of the services on an hourly basis.*

Class Counsel's requested fees equate to a lodestar multiplier of approximately 1.5 (not including future work).   This is within a reasonable range.   Future required services to be performed by Class Counsel are also included within the court's percentage award.

C.    *Whether the services were undertaken on a contingent fee basis.*

Class Counsel has been working on a contingent fee basis for the past eight years.   Class Counsel received some compensation for time and costs from October 2004 to August 2005 from the separate Oklahoma class action settlement, but has received no payment since 2005.   The court has considered the approximate eight year delay, during which Class Counsel provided services without receiving compensation.

D.    *Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others.*

Class Counsel asserts that only 300 individual police officers, departments and agencies filed independent claims.   Thousands of others relied exclusively on the Class

9

to pursue their vest claims. The Class allowed for a pooling of resources among these small, individual claimants. The Class also provides a mechanism for otherwise unwieldy State distributions. Class Counsel has protected the "little guys."

E.     *The complexity of the litigation.*

This matter was extremely complex due to the bankruptcy proceedings, the overlap of the Class Claim with the claims of the States and the United States, the numerous parties, including Toyobo and the German States, and the novelty of the issues presented. Without the involvement of Class Counsel, the Trustee and the court would likely still be wrestling with unresolved legal issues rather than looking forward to the ultimate closing of the case.

F.     *The professional skill and standing of counsel involved on both sides.*

The legal and procedural skills of Class Counsel in this case were extremely high. Likewise, almost all other attorneys appearing were of great skill and experience.

## V.  CONCLUSION.

Based on the court's findings and conclusions, this court will award Class Counsel attorneys' fees and expenses in the amount of 36% of the Net Class Claim Fund, i.e., the amount of the total Class distribution that remains after payment of fees to Rust Consulting, Inc., and Kinsella Media, LLC. A separate order shall be entered accordingly.

Dated this 14th day of November, 2013,
at Grand Rapids, Michigan.

_____
Honorable James D. Gregg
United States Bankruptcy Judge

10